UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CORY W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1424-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

**INTRODUCTION**

Plaintiff Cory W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

**BACKGROUND**

Plaintiff protectively filed an application for SSI on July 27, 2017, alleging disability beginning September 1, 2015 (the disability onset date), due to celiac disease and anxiety. Transcript ("Tr.") Tr. 135-40, 158. Plaintiff's claim was denied initially on December 12, 2017, after which he requested an administrative hearing. Tr. 15. On September 6, 2019, Administrative

Law Judge Paul Georger (the "ALJ") held a hearing in Buffalo, New York. Tr. 15, 32-60. Plaintiff

appeared and testified at the hearing and was represented by Zachary Zabawa, an attorney. Tr. 15.

Kathleen Doehla, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on October 24, 2019, finding that Plaintiff was

not disabled. Tr. 15-27. On August 4, 2020, the Appeals Council denied Plaintiff's request for

further review. Tr. 1-6. The ALJ's October 24, 2019 decision thus became the "final decision" of

the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is

disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 24, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since July 27, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: Mood disorder, social anxiety disorder, depression (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to perform simple, routine and repetitive tasks. The claimant is able to make simple work-related decisions. The claimant is able to interact occasionally supervisors, coworkers, and the general public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 3, 1990 and was 27 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 27, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-27.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on July 27, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 27.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ's mental RFC finding is not supported by substantial evidence because the ALJ purported to give persuasive weight to the opinion of consultative psychiatric examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano"), but failed to account for Dr. Fabiano's opined limitations in the RFC and failed to make any individualized findings regarding Plaintiff's stress. *See* ECF No. 11-1 at 1, 8-13.

The Commissioner argues in response that the ALJ properly considered the medical opinions of record, and Plaintiff failed to explain how the limitations the ALJ assessed do not account for Dr. Fabiano's opinion. *See* ECF No. 12-1 at 10-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ's decision was supported by substantial evidence. Plaintiff's contention that the ALJ's mental RFC did not account for his stress is meritless, as the ALJ provided a well-reasoned analysis of the record evidence in support of his RFC finding, and the ALJ's finding is consistent with any stress-related limitations Plaintiff may have.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the

ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the

RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at \*3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claims on July 27, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor

in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id.*

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id.* Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id.* Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id.*

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the

Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Plaintiff complains that the ALJ's RFC is unsupported because the ALJ found Dr. Fabiano's opinion to be persuasive, but then did not account for the doctor's limitations in the RFC. *See* ECF No. 11-1 at 8-10. Plaintiff further contends that the ALJ's RFC finding is unsupported by the record because the ALJ did not make any individualized findings regarding Plaintiff's stress. *See id*. at 10-13. Plaintiff's arguments are incorrect.

Dr. Fabiano opined that Plaintiff could understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance; and had only moderate limitations in his ability to interact adequately with supervisors, coworkers, and the public, regulate emotions and behavior, and maintain well-being. Tr. 237-38. Moderate mental limitations do not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work. *See Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (finding that an RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations and noting that the Second Circuit has recognized that moderate mental limitations do not prevent a claimant from performing unskilled

work) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Whipple v. Astrue*, 479 Fed.

Appx. 367, 370 (2d Cir. 2012); *Cohen v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 51, 53 (2d Cir.

2016)); *see also Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (concluding

that an RFC determination limiting a claimant to simple, routine, repetitive tasks and not

production rate or pace work was consistent with ALJ's assessment that claimant had moderate

difficulties with concentration, persistence, or pace due to attention deficit hyperactivity disorder,

difficulties reading, short term memory problems, and difficulties handling stress).

Furthermore, objective clinical findings support the ALJ's mental RFC findings. For

example, treatment notes showed that although Plaintiff had a flat affect, he was cooperative, alert,

and fully oriented (Tr. 229, 232, 236, 291, 294); he related adequately (Tr. 236); and he had intact

attention, concentration, memory; average intellectual functioning; fair insight; and good judgment

(Tr. 237). Despite testifying that he had trouble concentrating (Tr. 44), a September 2017 function

report completed by Plaintiff's father denied that Plaintiff had any difficulty paying attention (Tr.

178). *See* SSR 16-3p (An ALJ may consider the consistency of a claimant's statements against the

evidence in the record). The function report also stated that Plaintiff could finish what he started,

follow spoken and written instructions, and had no problems getting along with others. Tr. 178-

79.

Although he reported having no friends, Plaintiff said that he had a good relationship with

his family (Tr. 237) and would occasionally go out to dinner with his mother when she was in

town (Tr. 265). Tr. 24. Plaintiff also cared for his personal needs, prepared food, cleaned, did

laundry, managed his finances, read, watched television, exercised, enjoyed playing video games,

and used the internet for up to three hours each day. Tr. 45-47, 165, 173, 237, 240, 265, 277. *See*

20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in

evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at \*5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible). The ALJ noted, that while Plaintiff's reluctance to leave his home was "of concern," Plaintiff was able to occasionally shop, attend doctor's appointments, and went for a walk once or twice each month. Tr. 24.

The Commissioner's regulations also explicitly direct the ALJ to consider a claimant's medications and treatment other than medications, and their effectiveness. 20 C.F.R. § 416.929(c)(3)(iv)-(v). Despite complaints of anxiety and depression, Plaintiff was unwilling to try therapy or medications. Tr. 24, 265, 282. He said he only used meditation or walking to treat his symptoms. Tr. 265, 291, 294. Evidence of only conservative treatment, when considered with the record evidence as a whole, weighs against allegations of totally disabling functional limitations. *See Botta v. Colvin*, 2016 WL 6117724 at \*1 (2d Cir. Oct. 19, 2016); *Guerra v. Colvin*, 618 F. App'x 23, 25 (2d Cir. 2015); *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. Apr. 8, 2008); *see also Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at \*5 (W.D.N.Y. Dec. 21, 2015) (ALJ properly discredited the claimant's allegations because her routine treatment with medication and physical therapy managed her conditions). "While conservative treatment alone is not grounds for an adverse credibility finding," *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), "the ALJ may take it into account along with other factors." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646-47 (S.D.N.Y. 2019), *appeal dismissed* (May 31, 2019).

Based on the foregoing, the ALJ reasonably determined that Plaintiff's described limitations were not consistent with his activities of daily living or the "extremely conservative" treatment he sought for his conditions. Tr. 24.

The ALJ also considered records from treating nurse practitioner Linda Miller, FNP ("Ms. Miller"), at The Pulmonary Group of WNY. Tr. 20-21., Ms. Miller, issued several opinions all of which assessed limitations the ALJ found "extreme," as they were inconsistent with the evidence of record and with Ms. Miller's own treatment notes. Tr. 25. As the ALJ noted, Ms. Miller's treatment notes indicated that Plaintiff was mentally and physically stable, even as recently as July 2019. Tr. 25, 266, 294. As the ALJ aptly observed, "Ms. Miller appears to be sympathetic to the claimant's reporting of symptomology, as the expressed limitations rely solely on the claimant's reporting of symptoms." Tr. 23.

With respect to Ms. Miller's opinion that Plaintiff was very limited in making simple decisions, understanding, remembering, and carrying out simple instructions, and interacting with others (*see, e.g.*, Tr. 252, 254-55, 304), the ALJ reasonably found her opinions to be unpersuasive as they were inconsistent with the objective findings of record discussed above, including Plaintiff's wide variety of activities of daily living, his conservative treatment, and Ms. Miller's own reports that Plaintiff was mentally stable. Tr. 25, 252, 254-55, 282-87, 295, 302; *See* 20 C.F.R. § 416.920c(c)(1) (supportability factor), (c)(2) (consistency factor); *see also* 20 C.F.R. § 416.920c(b)(2). (Supportability and consistency "are the two most important factors in determining the persuasiveness of a medical source's medical opinion.").

For example, the ALJ noted that Ms. Miller's July 2018 assessment that Plaintiff was moderately limited in his mental functioning, specifically, understanding and remembering instructions, carrying out instructions, and maintaining attention and concentration, and very

limited when making simple decisions, interacting appropriately with others, maintaining socially
appropriate behaviors without exhibiting behavioral extremes, and functioning in a work setting
at a consistent pace (Tr. 252), was inconsistent with her examination findings and her own
treatment notes that Plaintiff was stable physically and mentally, with no abnormal findings upon
examination (Tr. 266). Tr. 22. Because the ALJ thoroughly explained his reasons for finding Ms.
Miller's opinions unpersuasive, including providing multiple citations to the record in support of
his finding, the Court finds no error in the ALJ's assessment of Ms. Miller's opinions.

Plaintiff complains that, while the RFC limits Plaintiff to simple tasks, simple work-related
decisions, and occasional social interaction, it does not clearly account for moderate limitations in
"regulating emotions, controlling behavior, and maintaining well-being" and does not address
"behavioral extremes [such as] off-task behavior, need for unscheduled breaks, performing tasks
at a consistent pace, or handling changes in a work setting." *See* ECF No. 11-1 at 9. According to
Plaintiff, these limitations are consistent with the limitations Ms. Miller included in her opinions.
*See id.* (citing Tr. 252, 254-55, 282-83, 304). However, as explained above, the ALJ properly
determined that Ms. Miller's extreme opinions were not supported by the record or her own
treatment notes. Accordingly, Plaintiff's reliance on Ms. Miller's opinions to support his argument
is unavailing.

Furthermore, contrary to Plaintiff's assertion (*see* ECF No. 11-1 at 10-13), limitations to
simple, unskilled work account for moderate and even marked limitations in an ability to deal with
stress. *See Uplinger v. Berryhill*, No. 18-CV-481, 2019 WL 4673437, at *7 (W.D.N.Y. Sept. 25,
2019) ("Marked limitations in mental functioning, including a marked limitation in ability to deal
with stress, do not mandate a finding of disability, but can be addressed with additional limitations
to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work

environment free of fast-paced production requirements."); *Blocker v. Saul*, No. 18-CV-6788, 2020 WL 1047737, at \*6 (W.D.N.Y. Mar. 4, 2020) (holding that, although claimant was "markedly limited in appropriately dealing with stress," the ALJ accounted for this by limiting claimant to " 'simple routine tasks,' 'occasional interaction with coworkers and the general public,' and 'low stress work defined as work involving only occasional decision making' ").

Moreover, Plaintiff fails to demonstrate how the ALJ's RFC limitation to simple, routine and repetitive tasks involving simple work-related decisions and occasional interaction with others does not adequately account for limitations in dealing with stress. Although the ALJ did not specifically use the word "stress" in the RFC finding, he imposed specific restrictions as part of Plaintiff's RFC to offset any workplace-related stressors and demands with which Plaintiff might have difficulty as a result of his mental impairments, and appropriately translated the mental limitations he found to be supported by the record into concrete, work-related terms to address the impact of Plaintiff's mental impairments on his ability to work. Tr. 20, 25. *See* SSR 96-8p. An RFC determination may adequately account for a claimant's stress-related limitations even without explicitly referencing stress limitation. *See Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at \*4 (W.D.N.Y. Nov. 26, 2018) (citing *Cosme v. Colvin*, 2016 WL 4154280, \*13 (W.D.N.Y. 2016) (finding that the ALJ's RFC finding "adequately accounted for [claimant's] limitations, including any limitations dealing with stress").

The record in this case reflects that the ALJ explicitly considered Plaintiff's depression and anxiety, social anxiety, and his difficulty handling stress, by limiting him to performing simple, routine and repetitive tasks; making simple work-related decisions; and limiting him to occasional interaction with supervisors, coworkers and the public. Tr. 25. As the ALJ explained, and as discussed throughout this opinion, Plaintiff's numerous activities of daily living, including daily

14

internet usage, video gaming, regularly exercising, and daily meditation techniques, demonstrate that no greater stress-related limitations are warranted in this case.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the treatment reports, the medical opinions, and Plaintiff's mostly routine and conservative care, as well as Plaintiff's activities of daily living, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter

judgment and close this case.

     **IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE